The Ohio National Bank of Columbus, Ohio, Trustee for the Land Trust Certificate Holders of the Harries Building, Inc. v. Commissioner.
Ohio Natl. Bank of Columbus v. Commissioner
Docket No. 106495.
United States Tax Court
1942 Tax Ct. Memo LEXIS 47; 1 T.C.M. (CCH) 194; T.C.M. (RIA) 42633; December 10, 1942
*47 In 1934 and 1935 payments were made by lessee to petitioner who was lessor and trustee of building in trust for the benefit of land trust certificate holders. The record disclosed that such payments were to be used to pay real estate taxes owed by the lessee. Held, the payments of which petitioner was custodian were impressed with a trust for the payment of real estate taxes owed by lessee and, therefore, did not constitute rent or taxable income to petitioner. Carroll Sprigg, Esq., 814 Harries Bldg., Dayton, O., and John M. Sprigg, Esq., for the petitioner. O. W. Swecker, Esq., and E. M. Woolf, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income taxes against petitioner totalling $2,375.34 for the calendar years 1934 and 1935 and a penalty of $154.68 for the year 1935. The penalty was assessed for failure to make a return. The sole issue presented is whether funds transferred during the taxable years in question by The Harries Building, Inc. to petitioner, as trustee for land trust certificateholders, were taxable income to petitioner. Findings of Fact Petitioner is a corporate trustee with its principal office *48 in Columbus, Ohio. It acts as trustee for the land trust certificate-holders of The Harries Building, Inc. (hereinafter referred to as the building company). As trustee petitioner filed a fiduciary income tax return for the calendar year 1934 with the Collector of Internal Revenue for the Eleventh District of Ohio. On this return petitioner reported gross income from rents of $23,725.96 and took deductions of $11,807.20 for real estate taxes paid in 1934, and other deductions of $11,918.76. On the return it made this explanation of the latter deductions: Trustees' fees and Expense reimburse-
ments
$ 347.75
Accumulated during 1934 for payment
of Real Estate Taxes in default and
payment to Certificate holders when
payments to them can be resumed
11,571.01
Petitioner filed no income tax return for the calendar year 1935. During the latter year it received $16,750 from the building company. During the calendar year 1936 it received $12,000 from the building company. The building company is a corporation organized under the laws of Ohio with its principal office in the city of Dayton, Ohio. In 1927, the year of its organization, the building company acquired legal title to *49 land and a building located at Main and First Street, Dayton, Ohio. In the same year it conveyed this title to petitioner as trustee for the benefit of land trust certificates holders. Petitioner in turn leased the premises to the building company for 99 years renewable forever at a yearly rental of $17,050. Under the indenture of lease between the building company and petitioner, it was agreed that the building company would pay in the name of petitioner all taxes imposed upon the property. The building company agreed to reimburse petitioner for any income taxes assessed against petitioner on rentals paid under the lease. In case of the nonpayment of taxes by the building company, petitioner at its option, but without any obligation so to do, could pay such taxes. In this event the building company was under a duty to repay petitioner for such taxes. The agreement and declaration of trust between petitioner and the holders of land trust certificates provided that all net rentals received by petitioner were to be used first as follows: In the payment of the expenses of administering this trust, any taxes, charges, assessments, and any and all amounts which the Trustee may be permitted *50 or required to pay for and on behalf of the Lessee under the Lease, and/or payment of any income tax or taxes which under any present or future law the Trustee may be required to pay upon the receipt by it of payments under the Lease or otherwise, and/or that the Trustee may be permitted or required to pay or withhold upon distributions to the certificate holders. Secondly, the net rentals could be distributed to the land trust certificate holders. In 1927 the building company executed a mortgage on its leasehold in favor of The Fidelity Building Association to secure a loan of approximately $178,000. No part of the principal of this loan has been paid by the building company and interest on the loan has been in default since 1931. The building company borrowed $10,000 from The Third National Bank of Dayton, Ohio, to pay its 1931 real estate taxes on the leased premises. Thereafter, the building company established a tax reserve fund in a special account with The Third National Bank for the payment of Ohio real estate taxes. Additions to this fund were made from time to time by deposits. In 1933 when this fund had reached approximately $4,400 The Third National Bank, without authority *51 from the building company, set off $4,000 thereof against the $10,000 still owing to it by the building company. On July 11, 1933, at the insistence of the land trust certificate holders and to prevent similar set-offs in the future by The Third National Bank, the tax reserve fund was transferred to a commercial or checking account in The Ohio National Bank of Columbus. On January 22, 1934 the tax reserve account amounting to $4,478.21 was transferred from the commercial account of The Ohio National Bank of Columbus to the trust department of such bank. This fund was transferred to the building company's rental cash account on the ledger of the trust department. The balance in the latter account immediately prior to the transfer was $1,350. This transfer was made at the demand of the land trust certificate holders to prevent the building company from using the transferred funds for any purpose other than the payment of realty taxes. The fund, after the transfer, was to be used to pay realty taxes owed by the building company. Prior to the transfer of the tax reserve account to petitioner, payments received from the building company were referred to on petitioner's rental cash account *52 for the building company as "rent"; subsequent to that time these payments were referred to as "deposits." Some time between March 28, 1934 and August 4, 1934, the building company entered into a contract with the State of Ohio under an act known as the "Whittemore Act" which provided for installment payments of delinquent real estate taxes and assessments for years prior to 1932 and for a discount for the prompt payment thereof. Under this contract the building company agreed to pay the full principal amount of its delinquent real estate taxes for the years prior to 1932, less penalties, interest and other charges in six annual installments with interest at the rate of 4% per annum payable annually from the date of the contract. It was further agreed that the first five annual installments should each be for 10% of the full original principal amount plus the prescribed interest and the next annual payment should be for the balance of such principal amount, or 50% of the original principal amount, plus the prescribed interest. So long as performance under this contract was continued, the property against which the taxes were assessed could not be entered on the foreclosure list. *53 The building company also agreed to pay when due the real estate taxes and assessments currently payable during the period over which the installment payments were to be made. Unpaid real estate taxes owed by the building company at the end of the fiscal years ending February 28, 1934 and 1935 amounted to $33,887.40 and $30,234.61, respectively. Unpaid rent owed to petitioner and unpaid interest owed to The Fidelity Building Association by petitioner totaled $53,648.20 and $81,078.20, respectively, for the same years. At the end of the same years the building company had operating deficits in the respective sums of $179,944.87 and $217,182.11. After the tax reserve account had been transferred from the commercial department of The Ohio National Bank of Columbus to petitioner, the real estate taxes and assessments both current and the 10% payments with interest due under the Whittemore Act contract owed by the building company to the State of Ohio were paid by means of vouchers drawn by petitioner on the funds in the building company's rental cash account. Petitioner considered that any amounts received from the building company had to be used first for the payment of real estate *54 taxes and assessments owed by the building company. The transfer of the fund from the commercial account of The Ohio National Bank of Columbus to petitioner was never noted on the building company's books. The sums added to this fund by the building company from time to time during the period in question were considered by the building company to be for the purpose of paying real estate taxes owed by the building company. It had an account captioned "Accrued Taxes" on which it accrued each month the approximate amount of real estate taxes which it owed. At the end of the year it adjusted this account to accord with the actual tax due as shown by the county treasurer's bills. When petitioner paid real estate taxes out of the fund which had been transferred to it for that purpose by the building company, petitioner would notify the building company of the amount of tax paid and the building company would then make an entry on its books crediting petitioner and charging its accrued tax account. In 1934, 1935, and 1936 petitioner paid real estate taxes and assessments for the building company out of the fund in its custody in the respective amounts of $11,807.20, $10,442.89, and $10,292.20. *55 From 1933 through 1936 the only distribution to land trust certificate-holders by petitioner from funds received from the building company was made on September 1, 1935 in the sum of $6,200. This distribution left a balance of $8,439.27 in the Cash rental account of the building company. The $6,200 distribution to land trust certificate-holders was made by petitioner with the knowledge that there would be a sufficient reserve to comply with the Whittemore Act contract when payments under the contract fell due. The building company was notified of the $6,200 distribution by petitioner to the land trust certificate-holders and entered the same on its accrued interest payments account, the term "interest" being used instead of the term "rent." On December 31, 1936, the balance shown in petitioner's rental cash ledger for the building company was $15,248.23. On December 31, 1936, petitioner made the following entry in the account: Remitted Harries Building, Inc.
Balance of the Company's funds
this date
$12,759.73
The $12,759.73 remitted to the building company by petitioner was deposited in the Winters National Bank of Dayton, Ohio, and entered by the building company in *56 its ledger as a "tax reserve fund." In 1937 the building company paid the final installment of delinquent real estate taxes due under the Whittemore contract out of the amount remitted to it by petitioner. Opinion VAN FOSSAN, J.: Petitioner filed a fiduciary return for 1934, reporting "income from rents and royalties" in the amount of $23,725.96, explaining the same as "for certificate holders, taxes, etc." It claimed a deduction for taxes paid, "Real estate taxes paid in 1934" in the amount of $11,807.20, and other deductions authorized by law of $11,918.76, or a total of $23,725.96, thus wiping out the total income. The latter item of deduction was explained as follows: "Trustee's fees and expense reimbursements - $347.75; accumulated during 1934 for payment to certificate holders when payments to them can be resumed - $11,571.01." For the year 1935 petitioner filed no return. Although the record does not contain a complete copy of the notice of deficiency, including the statement of details and reasons for adjustments, it appears from respondent's brief that respondent as to 1934 disallowed the deductions claimed and held that the $23,725.96 constituted income received by petitioner *57 from The Harries Building, Inc., under the provisions of section 22 (a) of the Revenue Act of 1934. As to 1935, for which year petitioner filed no return, respondent apparently determined the amount received from The Harries Building, Inc. to be $16,750, from which he deducted $362.72 as trustee fees and expenses, and distributions to beneficiaries in the amount of $6,200, holding the remainder to be income. He attached a penalty of 25 per cent for failure to file a return. Both parties cite as authority for the conclusion that the 1927 transaction was in effect in a loan secured by a mortgage. Under the facts and on authority of the Lazarus case we hold that The Harries Building, Inc. was in reality the owner of the property while petitioner was a mortgagee. Accordingly, The Harries Building, Inc., and not the petitioner, was entitled to deduct real estate taxes. This conclusion demonstrates that respondent was right in disallowing the deductions claimed by petitioner. There remains the question whether the money paid into the petitioner's hands by The Harries Building, Inc. and reported as income *58 by petitioner constituted income to it. The record discloses amply that the payments by the building company to petitioner during the taxable years in question were made into a tax reserve fund. This fund was in the custody of petitioner because the land trust certificate holders insisted that the fund be placed beyond the reach of creditors of the building company so as to assure its being used only for the payment of real estate taxes. Both the building company and petitioner understood that payments received by petitioner from the building company during 1934 and 1935 were to be used to pay real estate taxes on behalf of the building company. Moreover, all parties concerned recognized the necessity that the building company pay real estate taxes before any of its other obligations, including rent owing to petitioner. Unless this were done there was serious danger of the premises being sold for taxes. Such a sale would have wiped out completely the equity of both the building company and the land trust certificate holders. Under these facts petitioner was merely a custodian of the funds in its hands and the payments made to it during 1934 and 1935 were impressed with a trust for *59 the payment of real estate taxes due from the building company to the State of Ohio. Petitioner recognized this trust obligation by paying from the fund current and delinquent real estate taxes and assessments owed by the building company and notifying it of such payments. That petitioner recognized its obligation to the building company with regard to the disposition of the fund is indicated by the fact that in December 1936 petitioner turned back $12,759.73 of the fund to the building company to enable it to meet the final installment of delinquent taxes due under the Whittemore contract. It thus appears that all the funds in petitioner's hands, excepting the $6,200 distributed to beneficiaries in 1935 and for which deduction was allowed by respondent, were held in a custodial capacity for payment of taxes of The Harries Building, Inc. As such they were not income to petitioner and petitioner erred in so reporting the same. Decision will be entered under Rule 50.